UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-25064-BLOOM/Elfenbein

TABLEMATION STUDIOS, LLC,

 Plaintiff,

v.

CELEBRITY CRUISES, INC.,

 Defendant.
_____/

**ORDER ON MOTION TO DISMISS COMPLAINT & MOTION TO STRIKE**

**THIS CAUSE** is before the Court upon Defendant Celebrity Cruises, Inc.'s ("Celebrity") Motion to Dismiss the Amended Complaint and Motion to Strike, ECF No. [44] ("Motion"). Plaintiff Tablemation Studios, LLC ("Tablemation") filed a Response in Opposition to Celebrity's Motion ("Response"), ECF No. [50], to which Celebrity filed a Reply, ECF No. [58]. The Court has reviewed the Amended Complaint, the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

**I. BACKGROUND**

This action arises from a dispute over the use of certain intellectual property. According to the First Amended Complaint ("Complaint"), Tablemation and Skullmapping are "the creator[s] of an innovative, one-of-a-kind dining experience [called, *Le Petit Chef* (hereinafter 'LPC'),] for guests aboard Celebrity Cruise ships." ECF No. [35] at ¶ 7-8. Tablemation and Skullmapping "developed and conceived of [LPC together] in or around 2018 with exclusive rights belonging to Tablemation to operate on cruise ships." *Id.* at ¶ 9. While "Skullmapping was responsible for much

of the storyline, animation, and script," Tablemation improved upon those features and "conceived the idea of turning the animation into a unique dining experience that would be displayed on tables and plates on cruise ships." *Id.* at ¶ 10. Consequently, Tablemation "still holds the trade secrets that make the LPC Dining Experience work on Celebrity cruises." *Id.* at ¶ 11.

Not only does Tablemation hold trade secrets regarding the LPC experience on cruise ships, but around December 2016, "Tablemation entered into an Exclusive Copyright License and Service Agreement with Skullmapping that granted Tablemation exclusive rights to exhibit the LPC Dining Experience throughout the entire United States, all major cruise lines[,] and Caribbean resorts." *Id.* at ¶ 12.

On March 23, 2018, "Tablemation and Skullmapping entered into an Animation Development and License Agreement ("AD&L Agreement") with Celebrity . . . to display the LPC dining experience on its vessels[.]" *Id.* at ¶ 16. The AD&L Agreement "referred to Tablemation as the Licensor" of the LPC dining experience and stated that Celebrity was only permitted to display the LPC Dining Experience videos using "Tablemation's electronic equipment and proprietary technology." *Id.* at ¶¶ 16, 17, 21. The AD&L Agreement further provided that "Tablemation retained all right, title, and interest in and to the animated videos used in the LPC Dining Experience, and that the licenses Celebrity obtained under the AD&L Agreement expired upon the expiration or termination of the AD&L Agreement." *Id.* at ¶ 32. The AD&L Agreement was to take effect on "March 1, 2018, and culminated on December 31, 202[1], unless renewal terms were entered into by the parties in writing[.]" *Id.* at ¶ 35.

Around September of 2021, the parties renewed the AD&L Agreement for the following calendar year, "running from January 1, 2022, to December 31, 2022." *Id.* at ¶ 39. The terms of the renewed Agreement were identical to the original AD&L Agreement. *Id.*

In the Spring of 2022, the parties began negotiating a potential second renewal, which was to take effect on January 1, 2023. At the same time, Tablemation was also "negotiating with Skullmapping," but negotiations eventually "stalled due to a dispute regarding the LPC Dining Experience." *Id.* at ¶¶ 42, 44. Shortly thereafter, "Celebrity terminated negotiations with Tablemation . . . despite Tablemation's [previous] agreement to Celebrity's terms." *Id.* at ¶ 45. Due to Celebrity's spontaneous termination of the negotiations, the AD&L Agreement was not renewed, and the Agreement was terminated on December 31, 2022. *Id.* at ¶ 46.

Although the AD&L Agreement had been terminated, "Celebrity failed to return the LPC Dining Experience Equipment to Tablemation and continued to run the LPC Dining Experience with Tablemation's Equipment and trade secrets without providing Tablemation any royalties or compensation." *Id.* at ¶ 47.

Tablemation alleges that Celebrity conspired with Skullmapping and Tablemation's exclusive third-party vendor, Illuminating Magic, to have them assist Celebrity in maintaining and using Tablemation's equipment without Tablemation's approval "in contravention of specific contractual agreements," Tablemation has with both of those entities. *Id.* at ¶ 49. "As of the date of this First Amended Complaint, Celebrity has not returned any of Tablemation's Equipment and trade secrets despite Tablemation's numerous demands." *Id.* at ¶ 54.

In light of Celebrity's alleged misconduct, Tablemation filed its First Amended Complaint asserting the following claims: Trade Secret Misappropriation Under Florida's Uniform Trade Secret Act (Count I); Trade Secret Misappropriation Under 18 U.S.C. § 1836 (Count II); Conversion (Count III); Unjust Enrichment (Count IV); Tortious Interference with Business as to Tablemation's Business with Illuminating Magic (Count V); Tortious Interference with Business as to Tablemation's Business with Skullmapping (Count VI); Common Law Fraud (Count VII);

Non-Fraudulent Misrepresentation (Count VIII); Promissory Estoppel (Count IX); and Breach of Contract (X). ECF No. [35]. Celebrity thereafter filed the instant Motion seeking to dismiss the Complaint, arguing that the First Amended Complaint is a shotgun pleading and fails to state a claim upon which relief can be granted as to each of the ten counts alleged. See ECF No. [44]. Additionally, Celebrity seeks to strike Tablemation's request for a constructive trust in its Conversion, Unjust Enrichment, Common Law Fraud, Non-Fraudulent Misrepresentation, and Promissory Estoppel claims because those claims also seek to recover money damages. *Id.*

Tablemation responds that the Complaint is well-pled and properly states a cause of action for all ten counts. ECF No. [50] at 2-3. Regarding the constructive trust, Plaintiff contends that the availability of such relief is not determined by the availability of a remedy at law, and in any event, a plaintiff may seek such relief in the alternative. *See id.* at 19-20.

## II. LEGAL STANDARD

### A. Shotgun Pleadings

The Federal Rules of Civil Procedure require a pleading to contain a "short and plain statement of the claim" showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). In *Weiland*, the Eleventh Circuit identified four common shotgun pleading archetypes: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts," (2) a complaint guilty of "being replete with conclusory, vague, and immaterial facts[,]" (3) a complaint that commits the sin of "not separating into a different count each cause of action or claim for relief," and (4) a complaint that asserts "multiple claims against multiple defendants without identifying which of the defendants are responsible for which acts or

omissions, or which of the defendants the claim is brought against." *Id.* at 1321-23. The "unifying characteristic" of shotgun pleadings is that they fail "to give defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

The Eleventh Circuit has repeatedly and unequivocally condemned shotgun pleadings as a waste of judicial resources warranting dismissal.[1] *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (reaffirming the Eleventh Circuit has "little tolerance" for shotgun pleadings) (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, (11th Cir. 20218)). "Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's para-judicial personnel and resources. Moreover, justice is delayed for the litigants who are 'standing in line,' waiting for their cases to be heard." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356-57 (11th Cir. 2018) (quoting *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997)); *Finch v. Carnival Corp.*, 701 F. Supp. 3d 1272, 1279 (S.D. Fla. 2023).

### III. DISCUSSION

Celebrity contends that Tablemation's Amended Complaint should be dismissed as "an impermissible shotgun pleading." ECF No. [44] at 2. According to Celebrity, the Amended Complaint constitutes a shotgun pleading because "many counts adopt the material allegations of the preceding counts or paragraph such that some counts appear to state more than one cause of action." *Id.* (quoting *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1330 n. 22 (11th Cir. 2004)). Indeed, Celebrity contends that "each of Tablemation's counts—with the

---

[1] "Shotgun pleadings 'are flatly forbidden by the spirit, if not the letter of [Rule 8(a) and 10(b)]' because they are 'calculated to confuse the enemy and the court, so that theories for relief not provided by the law and which can prejudice an opponent's case, especially before the jury, can be masked.'" *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Weiland*, 792 F.3d at 1320) (additional level of citations and quotations omitted).

exception of counts IV (unjust enrichment) and XI (breach of contract)—incorporates the allegations of all preceding counts in each successive count." *Id.*

Tablemation responds that the First Amended Complaint is well-pled and that a complaint only constitutes a shotgun pleading where one of its pleadings "fails 'to give the defendant adequate notice of the claim against it and the grounds upon which the claim rests.'" ECF No. [50] at 3 (quoting *Weiland*, 792 F.3d at 1323). Tablemation argues that while the First Amended Complaint may incorporate paragraphs from previous sections and claims, it does not fail to adequately identify which allegations are relevant to the elements of each claim. According to Tablemation, Celebrity "cannot identify a single claim for which the predicate facts that comprise each element of the claim are not present in the individual count describing the claim or referred to specifically distinct paragraphs." *Id.* Accordingly, Tablemation maintains that its First Amended Complaint should not be dismissed on shotgun pleading grounds.

The Court finds that Tablemation's First Amended Complaint constitutes an improper shotgun pleading. As Celebrity correctly points out, Tablemation incorporates the preceding allegations, including allegations in preceding counts, into every subsequent count (except for the unjust enrichment claim and breach of contract claim), thereby causing confusion as to what allegations support which claims. *See United States ex rel. Musachia v. Pernix Therapeutics, LLC*, No. 2:18-CV-01445-RDP, 2020 WL 13564486, at *3 (N.D. Ala. Sept. 30, 2020) ("[I]ncorporating large swaths of allegations and 'rolling' counts into other counts 'down the line' is a shotgun pleading.") (citing *Weiland*, 792 F.3d at 1324). The challenges associated with this form of pleadings are not just well-established by the case law[2] but bear themselves out in the parties'

---

[2] *See e.g.*, *Consejo Regulador Del Tequila A.C. v. S2F Online, Inc.*, No. 3:25-CV-1129-MMH-LLL, 2025 WL 2770469, at *1 (M.D. Fla. Sept. 29, 2025) (explaining that when ruling on the sufficiency of claims in a complaint that "contains 'multiple counts where each count adopts the allegations of all preceding counts,'" courts are "faced with the onerous task of sifting out irrelevancies in order to decided for itself

arguments. For instance, Celebrity challenges the sufficiency of Tablemation's Non-Fraudulent Misrepresentation claim, arguing that the claim is not a recognized cause of action, and to the extent it is a valid claim, it is eviscerated by Plaintiff's Common Law Fraud claim, given that the fraud allegations are completely incorporated into the non-fraudulent misrepresentation allegations. *See* ECF No. [44].

Rather than directly addressing Celebrity's argument, Tablemation contends that it establishes a valid "negligent misrepresentation claim" by pointing to a mishmash of allegations in the Fraud and the Non-Fraudulent Misrepresentation claims, presumably because the allegations in support of the Non-Fraudulent Misrepresentation claim are insufficient on their own. *See* ECF No. [50] at 12. While Tablemation may indeed be able to properly set out a negligent misrepresentation claim based on its own selection of allegations, Tablemation explicitly incorporated *all* of the previous allegations in the First Amended Complaint, thereby making it exceptionally difficult task to determine which previous allegations support the Non-Fraudulent Misrepresentation claim in Count VIII, and which do not.

Celebrity points out other instances where the wholesale incorporation of prior allegations causes confusion as well. With respect to its Tortious Inference and Promissory Estoppel claims, Tablemation incorporates all its prior allegations, including its prior trade secrets allegations, into those counts. *See* ECF No. [58] at 2; ECF No. [35] at ¶¶ 82, 103. Notwithstanding the incorporation of those previous trade secret allegations, Tablemation argues that its TortiousInterference claims

---

which facts are relevant to a particular cause of action asserted") (quoting *Weiland*, 792 F.3d at 1321); *United States ex rel. Musachia v. Pernix Therapeutics, LLC*, No. 2:18-CV-01445-RDP, 2020 WL 13564486, at *3 (N.D. Ala. Sept. 30, 2020) ("The problem with a complaint like this is that it forces the court and defendants to guess what conduct the counts are referring to because the answer is always 'everything that the plaintiff has previously mentioned anywhere in the complaint.'") (quoting *United States ex rel. Wallace v. Exactech, Inc.*, 2020 WL 4500493, at *8 (N.D. Ala. Aug. 5, 2020) (additional level of quotation omitted)).

and Promissory Estoppel claims are distinct and do not have "much if anything to do with [its] misappropriation of trade secrets claim." ECF No. [50] at 18-19. Tablemation also runs into a similar issue with its Conversion claim, as Tablemation argues in its Response that the trade secret allegations have nothing to do with the Conversion claim in Count III, even though Tablemation explicitly incorporated its trade secret allegations in its claim for Conversion. *See* ECF No. [35] at ¶ 69; ECF No. [50] at 17. This confusion with the incorporation of previous counts and allegations is the precise problem the prohibition against shotgun pleadings seeks to avoid, and as such, dismissal of the First Amended Complaint is warranted. *Anderson v. District Board of Trustees of Central Florida Community College*, 77 F.3d 364, 366-67 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").[3]

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Celebrity's Motion, **ECF No. [44]**, is **GRANTED in part and DENIED in part**.

2. The Motion is **GRANTED** to the extent Celebrity seeks to dismiss the First Amended Complaint on shotgun pleading grounds. However, Celebrity's request to strike Tablemation's request for constructive trusts is **DENIED as moot**.

3. Tablemation's First Amended Complaint, **ECF No. [35]**, is **DISMISSED WITHOUT PREJUDICE** and with leave to amend.[4]

---

[3] Because the Court dismisses Tablemation's First Amended Complaint in its entirety on shotgun pleading grounds, the Court will not address Celebrity's additional arguments for dismissal at this time.

[4] "In the special circumstance of non-merits dismissals on shotgun pleading grounds, we have required district courts to *sua sponte* allow a litigant one chance to remedy such deficiencies. In these cases, even if the parties do not request it, the district court 'should strike the complaint and instruct counsel to replead

4. If Tablemation seeks to file a Second Amended Complaint, it shall do so no later than **November 12, 2025**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 4, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record

---

the case[.]'" *Vibe Micro, Inc.*, 878 F.3d at 1295 (internal citations omitted) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2006), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)).